IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| ICON HEALTH & FITNESS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PARK CITY ENTERTAINMENT, INC., a Utah corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 1:10-cv-195-RJS<br><br>Judge Robert J. Shelby |

Before the court are cross motions for partial summary judgment on the issue of Defendant Park City Entertainment's liability for royalty payments allegedly due under an April 2005 License Agreement with Plaintiff Icon Health & Fitness. The License Agreement concerns a number of Icon's patent claims subsequently cancelled by the United States Patent and Trademark Office ("PTO"). Park City moves the court for partial summary judgment arguing that Icon is not entitled to payment of any unpaid royalties accruing under the License Agreement prior to January 31, 2012 for sale of products incorporating the now-cancelled patent claims. (Dkt. No. 97.) Icon also moves the court for partial summary judgment, arguing that Park City's defenses to liability for accrued royalties fail as a matter of law and that Park City remains liable for unpaid royalties. (Dkt. No. 107.) These cross motions present primarily legal questions, including the holding and applicability of *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) ("*Lear*"), and

1

the construction and force of terms in Section 4.05 of the License Agreement. Having carefully considered the briefing of the parties and the arguments of counsel at the hearing on the motions, the court concludes that Park City cannot escape liability for: 1) the unpaid royalties related to the '560 Patent accruing before Park City filed its Answer on December 14, 2010; and 2) overdue royalties related to the '453 Patent accruing before Park City filed its Amended Answer on August 1, 2011.

## I. Factual Background

This case involves folding treadmills and a licensing agreement requiring payment of royalties for sales of treadmills manufactured utilizing certain intellectual property. Icon is a Delaware corporation that develops and sells exercise equipment. Icon holds a diverse and substantial intellectual property portfolio that includes patents, trademarks, and trade dress for fitness equipment. Park City is a Utah corporation operating in the personal fitness business. Park City sells fitness equipment, including treadmills. On April 26, 2005, Icon and Park City entered into a License Agreement wherein Icon licensed its patents for single and dual pivot folding treadmills to Park City. This License Agreement governed Park City's sale of treadmills using Icon's patented technology and contained a provision requiring Park City to pay royalties on sales of those treadmills.

The parties' licensing arrangement remained amicable until Icon suspected that Park City was failing to pay royalties on several of its treadmill patents. Park City responded that the patents they licensed from Icon, including the '560 patent, covered only single pivot treadmills. Icon believed the scope of its patents, and thus Park City's royalty liability, to be broader. Icon filed a Complaint on November 23, 2010, alleging contractual breaches and unfair competition.

On December 14, 2010, Park City answered Icon's Complaint and challenged the validity of Icon's '560 Patent. Icon filed an Amended Complaint on July 11, 2011, adding two causes of action for patent infringement. Icon alleged that Park City's folding treadmill products infringed two of Icon's patents, namely, Claims 1–13 of U.S. Patent No. 5,772,560 ("'560 Patent") and Claim 19 of U.S. Patent No. 5,674,453 ("'453 Patent"). On August 1, 2011 Park City filed an Amended Answer responding to Icon's Amended Complaint and added a challenge to the validity of the '453 Patent.

The case was stayed on November 1, 2011 to allow the PTO to reexamine all the patent claims at issue. On January 31, 2012, the PTO cancelled Claims 1–13 of the '560 Patent but allowed new claims under that patent. On May 15, 2012 the PTO cancelled Claims 1–3, 19 and 20 of the '453 Patent. On June 27, 2012, Icon filed a Second Amended Complaint alleging Park City failed to pay royalties due under the License Agreement, reasserting its claims for overdue royalties under both patents, but omitting its previous claims for infringement under the '453 Patent.

Icon denies that its claims for breach of contract and alternative claims for patent infringement rest solely on the cancelled claims of the '560 Patent. Icon asserts that the PTO's '560 Patent reexamination allows new claims 14–37, which provide a basis for an infringement action. Icon also alleges that Park City breached the License Agreement by failing to pay royalties for practicing claims 18 and 26 of the '560 Patent. Icon submits that Park City practiced the '560 Patent and paid royalties on it from the inception of the License Agreement through the first quarter of 2012.

Park City acknowledges that it failed to put Icon on notice that it was challenging the

validity of the '560 Patent prior to filing its Answer on December 14, 2010, or the validity of the '453 Patent prior to filing its Amended Answer on August 1, 2011. Park City also does not dispute that it paid royalties under the License Agreement through the first quarter of 2012. However, Park City alleges that it only paid royalties on one product, the TR2000 treadmill. The TR2000 is not an accused infringing device, and Park City alleges that it never paid any royalties on the treadmills at issue in this case.

## II. Motions for Partial Summary Judgment

Both parties move for partial summary judgment on the issue of liability for royalties. The court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the suit under the governing law, and a genuine issue is one for which the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (internal quotations and citations omitted). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

The parties' cross-motions raise primarily legal issues. The first issue is whether Park City can avail itself of the protections of *Lear* to avoid liability for unpaid royalties and, if so, whether invocation of such protections first required notice to Icon of Park City's intent to challenge the validity of the patents at issue. The second issue is one of contract interpretation. Park City contends that Section 4.05 of the parties' License Agreement forgives *all* unpaid royalties, regardless of when accrued, once a licensed patent is found invalid. Icon urges that the

parties intended this language to excuse only royalties that would otherwise become due and owing after the date on which a patent is found to be invalid.

### III. Applicability of *Lear*

The court first confronts the application of *Lear* on the undisputed facts. Park City seeks to excuse overdue unpaid royalties by invoking the protections *Lear* offers to licensees challenging the validity of a licensor's patent. At root, Park City and Icon dispute the nature of the *Lear* doctrine and the scope of its application. It is therefore instructive for the court to briefly sketch the facts, context, and holdings of that case.

#### A. *Lear v. Adkins*

*Lear* involved a gyroscope inventor, John Adkins, hired by Lear, Inc. to design an aviation gyroscope. *Lear*, 395 U.S. at 655. Adkins developed a method that improved the gyroscope for aviation use, and Lear added this method to its production process. *Id.* Lear and Adkins entered into a licensing agreement which contained a royalty provision in anticipation that Adkins would later obtain a patent on his gyroscope process. *Id.* at 657. Another provision in the licensing agreement allowed Lear to terminate the agreement if Adkins failed to obtain a patent on the technology. *Id.* Adkins' patent application went through numerous PTO rejections and revisions over a period of years, during which time Lear searched the prior art and found a patent which it believed anticipated Adkins' process. *Id.* Lear then informed Adkins that it would no longer pay royalties under the agreement. *Id.* at 659. Adkins eventually obtained his patent in 1960.

The parties spent years litigating in California state courts. *Id.* at 660–61. Lear asserted that the underlying process Adkins had invented was not novel enough to qualify for patent

5

protection and terminated the licensing agreement. *Id.* at 659. Adkins claimed that the licensing agreement obligated Lear to pay royalties regardless of the underlying patents' validity. *Id.* at 660. The California trial court and the California Supreme Court held for Adkins under the doctrine of licensee estoppel. *Id.* at 659–661. Ultimately both the trial court and the California Supreme Court found that the parties' licensing agreement barred Lear from questioning the validity of the patents. *Id.* at 660–61. The case eventually found its way to the Supreme Court.

After reviewing its precedent on licensee estoppel, the Supreme Court brought into focus the key question, one relevant to Icon and Park City here: whether "overriding federal policies would be significantly frustrated if licensees could be required to continue to pay royalties during the time they are challenging patent validity in the courts." *Lear*, 395 U.S. at 673. Because it did not want to give an economic incentive to licensors to delay litigation over patent validity, the *Lear* Court decided that a licensee would not be required to pay royalties on a patent whose validity is challenged. *Id.*

At the core of *Lear* however was an additional key fact. One aspect of Adkins argument in the case arose "out of the fact that Lear obtained its license in 1955, more than four years before Adkins received his 1960 patent." *Id.* at 671. Indeed, this concern motivated the court to pass on "the difficult question whether federal patent policy bars a State from enforcing a contract regulating access to an unpatented secret idea." *Id.* at 672. "[E]ven though an important question of federal law underlies this phase of the controversy" the Court found it "should not now attempt to define even in a limited way the extent, if any, to which the States may properly enforce the contractual rights of inventors of unpatented secret ideas." *Id.* at 675. Instead, *Lear* only addressed royalties in the period after the issuance of the 1960 patent, holding that "Lear

6

must be permitted to avoid the payment of all royalties accruing after Adkins' 1960 patent issued if Lear can prove patent invalidity." *Id.* at 674. This was in part because a contrary rule would give licensees "little incentive to initiate lengthy court proceedings, unless [they are] freed from liability at least from the time [they] refuse[] to pay the contractual royalties." *Id.*

### B. *Lear*'s Application and Subsequent Cases

Both Icon and Park City agree *Lear* applies prospectively from the date a licensee formally challenges the validity of a licensed patent. Accordingly, both parties agree that *Lear* excuses Park City for royalties accruing under the '560 Patent after December 14, 2010 and the '453 Patent after August 1, 2011. Indeed, *Lear*'s facts, holding, and context accord with the parties' mutual understanding regarding royalties for these time periods. Beyond this, however, Park City and Icon part ways. Park City argues that *Lear*'s reach extends further, precluding liability for any unpaid royalties, irrespective of either the dates Park City challenged the validity of the patents under the License Agreement or the dates that the royalties became due.

Park City relies on broad statements of *Lear*'s holding for these propositions. *See, e.g.*, *Lear*, 395 U.S. at 674 ("[W]e hold that Lear must be permitted to avoid the payment of all royalties accruing after Adkins' 1960 patent issued if Lear can prove patent invalidity."); *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 264 (1978) ("In [*Lear*] we held that a person licensed to use a patent may challenge the validity of the patent, and that a licensee who establishes that the patent is invalid need not pay royalties accrued under the license agreement subsequent to the issuance of the patent."). For Park City, *Lear* stands for the far-reaching proposition that once a patent is invalidated, the licensee escapes liability for any unpaid royalties that ever accrued under that invalid patent.

7

Icon disagrees, directing the court to subsequent decisions interpreting and applying *Lear* in the context of licensee estoppel, notably *Hull v. Brunswick Corporation*, 704 F.2d 1195 (10th Cir. 1983) and *Studiengesellschaft Kohle, M.B.H. v. Kohle Company*, 112 F.3d 1561 (Fed. Cir. 1997).[1] Icon points to prerequisites that the Federal Circuit imposes on licensees invoking the protections of *Lear*: they must "(i) actually cease[] payment of royalties, and (ii) provide[] notice to the licensor that the reason for ceasing payment of royalties is because [they] have deemed the relevant claims to be invalid." *Kohle,* 112 F.3d at 1568. The Tenth Circuit, considering *Lear* even earlier than *Kohle*, crafted similar precedent: "Courts interpreting *Lear* . . . have focused on whether the suspension of royalty payments is connected to the challenge to the patent's validity. These cases hold that if licensees wish to preserve patent invalidity as a defense to litigation over unpaid royalties, the licensees must notify the licensors that they are suspending payments because they question the validity of the patents . . . . [w]e agree." *Hull*, 704 F.2d at 1203 (citations omitted).

Icon argues that Park City has not met these requirements for unpaid royalties that accrued prior to the cancellation of patent claims at issue here. The court finds Icon's arguments generally compelling, and legally correct under the Tenth Circuit's decision in *Hull*, which is in

---

[1] The parties rely on argument primarily from Federal Circuit cases regarding the issue of liability for unpaid royalties. "We apply [Federal Circuit law] with respect to issues of substantive patent law and also with respect to certain procedural issues pertaining to patent law; we apply the law of the regional circuits on non-patent issues." *Aero Products Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016 (Fed. Cir. 2006). The court notes that Federal Circuit law likely applies because prerequisites to *Lear* are unique questions regarding the interaction of patent principles with royalties, but declines to decide whether the issues here presented are more accurately described as substantive or procedural because, for the reasons described herein, Park City has not satisfied necessary prerequisites under either Federal Circuit precedent in *Kohle* or Tenth Circuit precedent in *Hull*.

concert with the Federal Circuit's decision in *Kohle* and subsequent decisions. The Federal Circuit has indeed clarified the importance of the notice prerequisite: "[T]he *Lear* doctrine does not prevent a patentee from recovering royalties until the date the licensee first challenges the validity of the patent." *Go Medical Industries Pty, Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1273 (Fed.Cir. 2006).

Park City provided no notice of a challenge to the validity of Icon's '560 Patent until Park City answered Icon's initial Complaint on December 14, 2010, and no notice of a challenge to the '453 Patent until Park City answered Icon's Amended Complaint on August 1, 2011. This point is not in dispute.[2] Instead, Park City attempts to distinguish the facts of this case from *Kohle*. These attempts are spirited but ultimately unpersuasive. Park City seizes on language in *Kohle* noting that case was one of "rare, but potential, conflicts between state contract law and federal patent law." *Kohle*, 112 F.3d at 1567. Park City argues no such conflict exists here. Even if true, this conflict is not an operative bar to invoking *Kohle's* prerequisites to *Lear*. Park City also seizes on the fact that *Kohle* involved, in part, breach of a notice provision in a contract requiring the licensee to notify the licensor of new product developments. Park City argues that no such notice provision is present here. This factual distinction is irrelevant. Again, the notice

---

[2] At the hearing Park City brought an email to the court's attention. (Dkt. No. 123, Exh. B.) Park City cited the email as evidence that it was waiting for Icon to file an infringement action, that Park City had no affirmative duty to police the patent, and that Icon admitted certain of Park City's treadmills did not fall under the folding treadmill patents. Icon argues that the email is fraught with factual questions. The court agrees: The email is only evidence of a dispute on a fact that is not material. The email is unclear as to which treadmills fall under the folding treadmill patents. Notwithstanding whether Park City had an affirmative duty to police the patents, and regardless of Icon's admission as to which treadmills were covered, Park City still failed to provide to Icon the notice required under *Kohle* and *Hull* to invoke *Lear*'s protection for licensees.

9

provision does not operate as a bar to invoking *Kohle's* own prerequisites to *Lear*. Nothing in the *Kohle* decision suggests it is limited to cases involving a contractual duty to notify, and the court there did not rely on the notice provision in fashioning the two prerequisites to *Lear* protection.

The factual distinctions identified by Park City do nothing to escape *Kohle*, which addressed the exact question before us here: "Where the Court has found the relevant patent claims invalid, may the Licensor recover damages for breach of contract for past royalties due on processes allegedly covered by such claims, from the date of the alleged breach until the date that the Licensee first challenged validity of the claims?" *Kohle*, 112 F.3d at 1562. But even if the distinctions urged by Park City generated any doubt about the applicability of *Kohle*, the facts identified have no applicability to *Hull,* which involved no such notice provision or tension between federal and state law.

Tellingly, Park City's factual arguments result in an internal inconsistency arising between its characterization of the withholding of notice and the withholding of royalty payments. On one hand Park City claims that it withheld royalties because it believed that Icon's patents covered the treadmills at issue, but were invalid. Park City simultaneously argues that it withheld notice because the claims in Icon's patents did not cover the treadmills at issue. Regardless of how this inconsistency is ultimately resolved, Park City still failed to satisfy the necessary prerequisites to shield it from liability for overdue royalties related to the '560 Patent accruing before it filed its Answer on December 14, 2010 and overdue royalties related to the '453 Patent accruing before it filed its Amended Answer on August 1, 2011.

To overcome the lack of notice, Park City alternatively acknowledges *Kohle* but urges the court to exempt it from the notice requirement under *Kohle* as a matter of equitable balancing. The court declines Park City's invitation. Neither *Kohle* nor *Hull* suggest any authority for a trial court to relieve licensees of the prerequisites identified in the cases, and Park City cites no case supporting the existence of such broad discretion.

C.     *Lear*'s Policy Considerations

The court's ruling is also importantly consistent with *Lear*'s policy considerations, which demand that Park City not be allowed to avoid all overdue royalties. *Lear* was concerned with fostering "full and free use of ideas in the public domain." *Lear*, 395 U.S. at 674. "[*Lear*'s holding] relies on the desirability of encouraging licensees to challenge the validity of patents, to further the strong federal policy that only inventions which meet the rigorous standards of patentability shall be withdrawn from the public domain." *Aronson*, 440 U.S. at 264. Allowing Park City to "delay a timely challenge to the validity of the [licensed patents] and postpone[] the public's full and free use of the invention of the [licensed patents]," *Kohle*, 112 F.3d at 1568, would frustrate the important policies articulated in *Lear* and carefully developed by subsequent courts. Park City's proposal would eviscerate the practical effect of a notice provision and create an economic disincentive to licensees to police their patents. Rather it would instead create a perverse incentive to avoid the risk and expense of an unsuccessful challenge to patent validity by giving licensees a risk-free method of later avoiding all unpaid royalties.

This result would turn the policy rationale of *Lear* on its head. "Permitting licensees to avoid royalties that they suspended for reasons other than to challenge validity would give the licensees 'additional economic incentive to devise every conceivable dilatory tactic in an effort to

11

postpone the day of final judicial reckoning.'" *Hull*, 704 F.2d at 1203–04 (quoting *Lear*, 395 U.S. at 673). Park City effectively asks the court to render a broad interpretation of *Lear* unrelated to subsequent notice rules and divorced from the factual background of *Lear* itself. "[T]his court must prevent the injustice of allowing [the licensee] to exploit the protection of the contract and patent rights and then later to abandon conveniently its obligations under those same rights." *Kohle*, 112 F.3d at 1568. By limiting Park City to avoidance of only those royalty payments tied to its challenges of patent validity the court "prevents the rule in *Lear* from being used to frustrate the policies enunciated there." *Hull,* 704 F.2d at 1204.

It is undisputed that Park City did not put Icon on notice of a validity challenge until December 14, 2010 as to the '560 Patent, and August 1, 2011 as to the '453 Patent. This is enough to defeat Park City's use of the affirmative defense in *Lear* to avoid royalty payments that accrued prior to those dates. Park City cannot avail itself of *Lear*'s protections because on the undisputed facts – namely, the timing and content of its Answer and Amended Answer – as well as its own admissions it has not met the prerequisites required to do so.

### IV. Contract Provisions

The second question raised by the parties' cross-motions concerns the operation of language regarding royalties in the parties' License Agreement. Park City argues that the express terms of the License Agreement allow it to avoid overdue royalties accruing before January 31, 2012. This argument turns on the interpretation of Section 4.05 of the License Agreement, the "No Recourse" clause, which reads:

> Notwithstanding any of the foregoing, if, at any time during the term of this Agreement, ICON or Licensee shall be unable to uphold the validity of any of the Licensed Patents against any alleged infringer, Licensee shall not have a damage claim for refund or

12

reimbursement against ICON for past royalty payments. No royalties shall be due under any claim of any Licensed Patent held to be invalid by a court, tribunal, or regulatory agency having jurisdiction between the time of such a finding of invalidity until such time as the holding of invalidity is reversed by a reviewing court, tribunal, or regulatory agency having jurisdiction.

Park City reads the phrase "past royalty payments" in the second sentence to mean "past royalties of any kind." For Park City, it naturally follows that "royalties" in the sentence starting "[n]o royalties shall be due" includes the overdue royalties at issue here, and Section 4.05 requires that no royalties of any kind are due once patent claims are held invalid. Icon responds by urging the court to look to the context of the entire License Agreement. In context Icon argues "no royalty shall be due" clearly refers to royalties accruing after Section 4.05's "finding of invalidity". Icon contends the clear meaning of the phrase "royalties shall be due" in Section 4.05 supports this interpretation.

Both parties stipulate that Utah law governs the contract provision. Under Utah law the court first must determine whether Section 4.05 is ambiguous. The Utah Supreme Court notes two potential types of ambiguity in a contract: "(1) facial ambiguity with regard to the language of the contract and (2) ambiguity with regard to the intent of the contracting parties." *Daines v. Vincent*, 190 P.3d 1269, 1276 (Utah 2008). Because the second type of ambiguity permits consideration of parol evidence, the court first must evaluate facial ambiguity. *Id*. ("The question of ambiguity begins with an analysis of facial ambiguity.").

Two procedures govern the analysis of facial ambiguity in Utah. First, "when determining whether a contract is ambiguous, any relevant evidence must be considered." *Id.* (citations omitted). Without a broad consideration of this evidence, "the determination of ambiguity is inherently one-sided, namely, it is based solely on the extrinsic evidence of the

13

judge's own linguistic education and experience." *Id.* (citing *Ward v. Intermountain Farmer's Ass'n*, 907 P.2d 264, 268 (Utah 1995)). "Second, after a judge considers relevant and credible evidence of contrary interpretations, the judge must ensure that the interpretations contended for are reasonably supported by the language of the contract." *Id.* (citing *Ward*, 807 P.2d at 268) (quotations omitted). If the contract is facially ambiguous, then summary judgment is not available as a matter of law, and the contract must be interpreted as a matter of fact. *WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1145 (Utah 2002).

Ambiguity itself is found in the presence of multiple reasonable interpretations. "An ambiguity exists where the language is reasonably capable of being understood in more than one sense." *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 605 (Utah 2002) (citations and quotations omitted). There is no ambiguity if "the language of the contract or release is not susceptible to contrary, tenable interpretations." *Daines*, 190 P.3d at 1277 (citations and quotations omitted).

Section 4.05 is facially unambiguous. "A correct application of the *Ward* rule to determine what the writing means begins and ends with the language of the contract." *Daines*, 190 P.3d at 1277. The phrase "no royalties shall be due" can only plausibly refer to royalties accruing after a finding of patent invalidity. Read plainly and in the context of language in the same sentence delineating a precise operable time frame, "royalties" in the second sentence is not susceptible to any other reasonable interpretation. The plain language of Section 4.05 provides that: "No royalties shall be due . . . between the time of such a finding of invalidity until such time as the holding of invalidity is reversed." "[S]uch a finding" refers to the condition precedent, namely, the finding by a court, tribunal, or other appropriate agency of the invalidity

14

of a licensee's patent. Equating "royalties" to mean "any royalties due," as urged by Park City, would render meaningless the clause in the sentence starting with "between the time." A reasonable reader would not interpret the phrase "no royalties shall be due" in a way that would render half the sentence in which the phrase occurs grammatically superfluous. The court must interpret the contract in a manner that gives effect to each provision negotiated by the parties. *Wagner v. Clifton*, 62 P.3d 440, 443 (Utah 2002) (a court must "attempt to harmonize all of the contract's provisions and all of its terms when determining whether the plain language of the contract is ambiguous") (citations and quotations omitted).

Importantly, "words and phrases do not qualify as ambiguous simply because one party seeks to endow them with a different interpretation according to [their] own interests." *Saleh v. Farmers Ins. Exch.*, 133 P.3d 428, 433 (Utah 2006). Park City strives to create ambiguity through a strained interpretation. Park City first argues that, in contrast to "past royalty payments" in the previous sentence, "no royalties shall be due" is unmodified by "past" and its absence requires "no royalties" to refer to any type of royalty payments. But the lack of "past" is easily accounted for by the express time frame already mentioned in the second half of the sentence, which, as Park City itself admits, "is directed toward the obligations between the parties *after* the Licensed Patents have been found invalid." (Dkt. No. 98, pg. 14.) (emphasis added)

Park City also motivates its competing interpretation by arguing that elsewhere in the License Agreement "royalties" is treated in sections related to calculating and paying royalties and generating royalty reports, but in Section 4.05 "royalties" is directed towards separate issues, namely patent infringement and duties. This is correct. It is also immaterial. The fact that

15

sections of a contract concern themselves with different subject matter does not require or even counsel that the contract's use of phrases concerning the payment of royalties be interpreted as divergently as Park City suggests. More importantly, Park City's argument is self-defeating on a closer glance: the second sentence unambiguously refers to patent infringement, but infringement as it relates to the calculation and payment of royalties "between the time of such a finding of invalidity until such time as the holding of invalidity is reversed." Again, this time frame bounds the second sentence's operation. The second sentence no more refers to past overdue royalties than it does to prospective royalties beyond any potential reversal of invalidity. It is not reasonable to interpret the phrase "royalties" as falling outside this time frame given the text of the second sentence and its context within Section 4.05.

Park City further suggests that Icon's interpretation would render key terms of Section 4.05 meaningless. The court finds this argument unconvincing. Park City argues that Icon's interpretation would render meaningless the word "No" at the beginning of the second sentence, and instead make Section 4.05 apply only to prospective royalties. This is not problematic, however, as Section 4.05 clearly applies to prospective royalties accrued from the date of an invalidity finding. Park City in contrast urges the court to read the word "No" as a broad adjective modifying "royalties." The word "No" cannot charitably be read this way. In Section 4.05 it functions as a simple negation, which is the natural reading of "No" given the use of "shall" as a modal verb indicating a command. Additionally, the bounded time frame of the second sentence in Section 4.05 does include both "past and prospective" royalties, as Park City urges: past and prospective *from the point of a finding of patent invalidity*.

Having determined that Section 4.05 is facially unambiguous, "we do not need to resort to the admission of parol evidence on the question of intent, because absent a finding of facial ambiguity, the parties' intentions must be determined solely from the language of the contract." *Daines*,190 P.3d at 1279 (quotations omitted). That is, "[i]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Cent. Fla. Invs., Inc.*, 40 P.3d at 605. Simply because Park City places the phrase "no royalties shall be due" in contention does not make Section 4.05 ambiguous and does not alter the parties' intent as evidenced within the four corners of Section 4.05. Section 4.05's meaning is facially clear and does not excuse Park City from past overdue royalties.

## V. Conclusion

With this ruling Park City is liable for royalties that accrued under patent claims that were subsequently invalidated. While the patent claims were retroactively invalid, the law does not sanction the retroactive cancellation of overdue royalties under the facts here presented.

Park City's Motion for Partial Summary Judgment on Accrued Royalties (Dkt. No. 97) is DENIED. Icon's Motion for Partial Summary Judgment (Dkt. No. 107) is GRANTED IN PART AND DENIED IN PART. It is GRANTED to the extent that Park City cannot resort to the *Lear* defense to excuse payment of overdue royalties related to the '560 Patent accruing before it filed its Answer on December 14, 2010, nor overdue royalties related to the '453 Patent accruing before it filed its Amended Answer on August 1, 2011. Park City also cannot excuse payment of these royalties under Section 4.05 of the License Agreement. To the extent Icon seeks to prevent

Park City from resorting to these defenses after December 14, 2010 and August 1, 2011 respectively the motion is DENIED.

    SO ORDERED this 7th day of August, 2013.

                  BY THE COURT:

                  _____
                  ROBERT J. SHELBY
                  United States District Judge