IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| ICON HEALTH & FITNESS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PARK CITY ENTERTAINMENT, INC., a Utah corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER ON CLAIM CONSTRUCTION<br><br><br>Case No. 1:10-cv-195-RJS<br><br>Judge Robert J. Shelby |

This is a patent infringement suit. Plaintiff ICON Health & Fitness alleges that Defendant Park City Entertainment (PCE) infringed U.S. Patent 5,772,560 (the '560 Patent). Before the court is the task of interpreting a number of disputed terms in several of the '560 Patent's claims. The parties submitted briefing on the disputed terms and the court held a *Markman* hearing. After careful consideration, the court issues this Order construing the terms.

### BACKGROUND

ICON's '560 Patent covers a folding treadmill. The patent defines the general nature of the invention as relating "to treadmills and, more particularly, the treadmills of the type that have a tread base that is rotatably attached to a structure and orientable from a first position for performing exercises to a second stored position."[1] The treadmill is in first position when the

---

[1] Dkt. 155-1, Exh. A, pg. 19, col. 1, lns. 6-10.

1

tread base is extended for exercise and in second position when the tread base is collapsed for storage.  A latch secures the tread base when the treadmill is in second position.

At issue is the construction of claims 1, 14, 15, 17, 18, 19, 26, 29, 30, 31, 34, and 35 of the '560 Patent.  The parties dispute three terms: "lift means," "an axis," and "latch," along with five distinct phrases that contain these terms.

## ANALYSIS

### I.  Legal Standard

A patent's claims "define the invention to which the patentee is entitled the right to exclude."[2]  Construing the scope and meaning of a patent's claims is a question of law.[3]  A proper construction is "consistent with a patent's internal logic," "comports with the instrument as a whole," and "preserve[s] the patent's internal coherence."[4]  A claim's terms are "generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."[5]

Courts begin the analysis with the claim language.[6]  If ambiguity exists in the claim language, courts also look to other intrinsic evidence: the specification and prosecution history.[7]  If further inquiry is needed, courts also look to extrinsic sources "regarding the relevant scientific principles, the meaning of technical terms, and the state of the art."[8]

After conducting the *Markman* hearing and carefully considering the parties' arguments, the court construes the claims as outlined below.

---

[2] *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed.Cir.2004)
[3] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389- 90 (1996).
[4] *Id.*
[5] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).
[6] *Id.*
[7] *Id.*
[8] *Am. Honda Motor Co. v. Coast Distribution Sys., Inc.*, 609 F. Supp. 2d 1032, 1036 (N.D. Cal. 2009).

## II. Claim Construction

### A. "Lift Means"

The parties dispute construction of the term "lift means," which appears in a number of claims. In a separate case, Judge Benson construed the term "lift means" in the '560 Patent to accompany the function of "urge" or "to exert a driving or impelling force" and the corresponding structure "to include a gas cylinder that applies a torque force in the direction illustrated in diagram 13 to urge said tread base from said first position to said second position."[9] Judge Benson defined "gas cylinder" as "a cylinder structure that uses gas and/or fluid to exert a torque on the tread base."[10] While these constructions are a useful guidepost, they are not binding on the court.

### i. Claims 1, 14, 26, 30, and 34

ICON and PCE dispute construction of the phrase "lift means interconnected between said support structure and said tread base to urge said tread base from said first position to said second position." Below are the parties' proposed constructions and the court's construction.

| Claims 1, 14, 26, 30, and 34<br><br>Disputed Element | ICON's Proposed Claim Construction | PCE's Proposed Claim Construction | Court's Claim Construction |
|---|---|---|---|
| lift means interconnected between said support structure and said tread base to urge said tread base from said first position to said second position | a cylinder structure that uses a gas and/or fluid to encourage the tread base to move in the direction of the second position from the first position | lift means interconnected between said support structure and said tread base to continuously urge said tread base from said first position to said second position, which lift means is a gas spring cylinder or statutory equivalents thereof | lift means comprised of a cylinder structure that uses gas to encourage the tread base to move in the direction of the second position from the first position |

---

[9] *ICON Health and Fitness, Inc. v. Spirit Manufacturing, Inc.*, No. 1:97-cv-114B, at 38 (D. Utah Dec. 30, 1999).
[10] *Id.* at 41.

3

In claims 1, 14, 26, 30, and 34, "lift means" is used as part of a means-plus-function clause. To construe means-plus-function clauses, courts follow a two-step process: (1) identify the claimed function and (2) identify the structure disclosed in the specification corresponding to the claimed function.[11] First, the claim identifies the function as "to urge said tread base from said first position to said second position." Second, the only structure disclosed as a "lift means" in the specification is a "gas cylinder."

ICON proposes that "gas cylinder" means "a cylinder structure that uses a gas and/or fluid." In the court's view, "gas cylinder" is unambiguous as understood by a person of ordinary skill in the art: a cylinder structure filled with or utilizing gas. This unambiguous meaning precludes ICON's proposed construction that the cylinder is filled with "gas and/or fluid." Gas is a type of fluid. Construing "gas cylinder" as a cylinder filled with fluid broadens the term "gas" to include all types of fluid, including liquids. Such a construction would conflate a subset of a category (gas) with its entire category (fluid). This result would render "gas" meaningless.[12]

PCE argues that ICON has disavowed a narrower meaning of "gas cylinder" during prosecution. This argument is unavailing. A disavowal must be "clear and unambiguous"[13] and based on the "totality of the prosecution history."[14] Put differently, a disavowal occurs when "the sum of the patentees' statements during prosecution would lead a competitor to believe that the patentee had disavowed coverage."[15]

---

[11] *See, e.g.*, *VW Enters., Inc. v. Interact Access. Inc.*, 424 F.3d 1324, 1329 (Fed. Cir. 2005); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002); *York Prod., Inc. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1574 (Fed. Cir. 1996).
[12] The Federal Circuit has repeatedly avoided constructions that would render claim terms meaningless. *See, e.g.*, *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1379 (Fed. Cir. 2006); *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005).
[13] *Storage Tech. Corp. v. Cisco Sys. Inc.*, 329 F.3d 823, 833 (Fed. Cir. 2003).
[14] *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008).
[15] *Id.*

PCE points to references ICON made during patent prosecution contesting the patent examiner's conclusion that the prior art made the combination of a lift-assist device and a folding treadmill obvious. ICON referenced other patents (Rulis, Teague, and Doetsch) in the reexamination history and noted that "Rulis and Teague each disclose using gas cylinders" and "Doetsch simply teaches construction of a gas cylinder." The lift-assist structures in those three patents are described as gas springs. Thus, PCE argues, ICON equated gas cylinder with gas springs. But the court finds that ICON's statements do not constitute a clear and definitive disavowal. ICON referred to the patents to argue that no one had previously combined a lift-assist structure with a folding treadmill. The context and apparent purpose of the statements show that ICON did not clearly and unambiguously disavow a narrower meaning of gas cylinder. Consequently, the file history does not limit the claim construction. The court construes the claim as "lift means comprised of a cylinder structure that uses gas to encourage the tread base to move in the direction of the second position from the first position."

### ii. Claims 18 and 30

Claims 18 and 30 both contain the term "wherein said lift means comprises a gas cylinder with a first end attached to the feet means and with a second end attached to the tread base at a point between said axis and the rear of said tread base." Given the similarity in the operative terms, the court construes these claims in the same manner as the claims discussed above.

| Claims 18 and 30 Disputed Element | ICON's Proposed Claim Construction | PCE's Proposed Claim Construction | Court's Claim Construction |
|---|---|---|---|
| wherein said lift means comprises a gas cylinder with a first end attached to the feet means and with a second end attached to the tread base at a point between said axis and the rear of said tread base | a cylinder structure that uses a gas and/or fluid to encourage the tread base to move in the direction of the second position from the first position | wherein said lift means consists of a gas spring cylinder with a first end attached to the feet means and with a second end attached to the tread base at a point between said axis and the rear of said tread base. | wherein said lift means comprises a cylinder structure that uses gas to encourage the tread base to move in the direction of the second position from the first position, with a first end attached to the feet means and with a second end attached to the tread base at a point between said axis and the rear of said tread base |

### iii. Claim 15

This claim also involves construction of the term "gas cylinder." The court has already construed the term as "a cylinder structure that uses gas" and declines PCE's invitation to add "spring" to the construction.

| Claim 15 Disputed Element | ICON's Proposed Claim Construction | PCE's Proposed Claim Construction | Court's Claim Construction |
|---|---|---|---|
| wherein said lift means comprises a gas cylinder | a cylinder structure that uses a gas and/or fluid to encourage the tread base to move in the direction of the second position from the first position | wherein said lift means consists of a gas spring cylinder | wherein said lift means comprises a cylinder structure that uses gas |

### B. "Rotates About an Axis Between"

The parties dispute construction of the phrase "wherein the tread base rotates about an axis between the first position and the second position," which is contained in Claims 14, 18, 26, 30, and 34. The table below reflects the proposed constructions and the court's construction.

| Claims 14, 18, 26, 30, 34 Disputed Element | ICON's Proposed Claim Construction | PCE's Proposed Claim Construction | Court's Claim Construction |
|---|---|---|---|
| wherein the tread base rotates about an axis between the first position and the second position | wherein the tread base rotates about one or more axis between the first position and the second position | wherein the tread base rotates from the first position or the second position to the other position about a single base axis that is between the first position and the second position | wherein the tread base rotates between the first and second position about a single axis that may move |

The dispute over these terms in the briefing concerned two issues. The first was whether "an axis" should be construed as a single axis or multiple axes. But ICON conceded during the *Markman* hearing that the claim term "an axis" in the context of the '560 Patent meant a single axis. The second and sole remaining issue is whether that single axis is fixed in place.

The specification notes that the axis "may be located above the tread base" when the tread base is in the first position.[16] The specification further notes that adjusting the straps running alongside the tread base "may be selected to position the center of gravity of the tread base relative to the base axis."[17] These descriptions in the specification indicate that the axis may move. The court therefore construes this phrase as "wherein the tread base rotates between the first and second position about a single axis that may move."

### C. "Latch"

The parties dispute construction of the phrase "latch for stably retaining the tread base in the second position relative to the support structure." This phrase appears in Claims 17, 19, 29, 31, and 35. The court finds the phrase to be clear and declines to further construe it.

---

[16] Dkt. 155-1, Exh. A, col 5, lns 8-10.
[17] *Id.* at col. 5, lns. 11-15.

| Claims 17, 19, 29, 31, 35 Disputed Element | ICON's Proposed Claim Construction | PCE's Proposed Claim Construction | Court's Claim Construction |
|---|---|---|---|
| latch for stably retaining the tread base in the second position relative to the support structure | a latch for stably retaining the tread base in the second position relative to the support structure | a latch for stably retaining the tread base in the second position relative to the support structure, wherein the latch connects the tread base to the upright structure using a bar attached to the tread base that is releasably inserted into a receiving mechanism attached to the upright structure | latch for stably retaining the tread base in the second position relative to the support structure |

PCE argues that the claim term "latch" is ambiguous because it does not "particularly point[] out and distinctly claim[] the subject matter" as 35 U.S.C. § 112(b) requires. PCE thus urges the court to look beyond the claim language to the specification and prosecution history to construe the terms. But the claim language is clear. Put differently, "the ordinary meaning of claim language as understood by a person of ordinary skill in the art" is "immediately apparent."[18]  The court declines to consider prosecution history or import limitations from the specifications into the claims' construction.[19]

The court construes Claims 17, 19, 29, 31, 32, and 35 as they are unambiguously written: "latch for stably retaining the tread base in the second position relative to the support structure."

## CONCLUSION

For the reasons stated, the court adopts the constructions set out above. A status conference is set for November 19, 2014 at 2:00 p.m. in Room 7.300 of the federal courthouse.

---

[18] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005)
[19] *See id.* at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.")

8

SO ORDERED this 13 day of November, 2014:

                              BY THE COURT

                              _____
                              ROBERT J. SHELBY
                              United States District Judge